2167 Genuine Enabling Technology v. Nintendo Co., Ltd. The District Court's claim construction should be reversed for three reasons. One, the District Court's construction is contrary to the statements made by the inventor to distinguish the Yolen reference. Two, the District Court improperly relied on expert testimony when there was no ambiguity and the District Court identified none. And lastly, three, the District Court used expert testimony to determine what the inventor should have said in distinguishing Yolen and not focused on what he actually said. Your Honors, each of these approaches violates the focus this Court's law places on the intrinsic evidence to construe claims. It also violates the underlying reason for the emphasis this Court places on the intrinsic evidence, which is that it serves a public notice function. Based on the statements made by the inventor, the intrinsic evidence shows that the public had noticed that the input signal referred to signals containing 20 Hz or higher frequencies. The public never had noticed. Counselor, this is Judge Reina. Let's go to your second point that you raised, reliance on expert testimony. I don't think you're saying that expert testimony has no place in claim construction that involves disclaimer of claim scope, correct? That's not your argument. That is not my argument. Okay, there is a place for extrinsic evidence or, as in this case, expert evidence. Yes. Where does that expert evidence apply to? To the question as to whether there's been a clear and unmistakable disclaimer or does it go to the secondary part of that, and that is the claim construction after the initial question of whether there's been a disclaimer of claim scope or not. Where does expert opinion apply in this type of scenario? Your Honor, the expert opinion can apply to that first question on whether there's clear disclaimer, but here is the caveat to it all, I think, based on your law, which is that when that analysis is being done, if the statements are clear as to what has happened, then there is really no place for expert testimony to reinterpret those statements. Who makes that decision whether they're clear or not? It just seems to me that any exercise involving determining whether there's been a disavow or disclaimer of claim scope, it inherently involves ambiguity. You're going to get arguments from both sides taking different positions. Let me answer that with an example from this case, Your Honor. I think the way this court's law addresses extrinsic evidence like expert testimony is one bright line is if you're using expert testimony to contradict otherwise clear language from the intrinsic evidence. That's where I think this court has drawn a fairly bright line. One example of that is one of the statements that's very clear from the inventor, Mr. Nguyen's statements to the Patent Office in distinguishing Yolen was that slow varying signals are not signals that contain audio or higher frequency. If you just take that statement, there's nothing ambiguous about that. That's not where the expert testimony was used to reach that decision. The decision, the expert testimony seems to me to be used as to whether the claim construction after that decision has been made of what was disavowed, then is whether on the claim construction, that's the disavowed signals or frequencies, whether the disavowed signals have frequencies up at least to 500 Hz. Yes, but that is partly exactly where the error is, Your Honor. When you know that the inventor has told the Patent Office, we have slow varying signals and we have signals that contain frequencies greater than 20 Hz. The court now saying, I'm going to change that border from 20 Hz or the audio frequency range now to 500 Hz, that's contradicting the direct statement. Well, isn't that where the expert testimony came in? But that's where it's contrary to the law. There's no basis to bring in expert testimony to vary the clear intrinsic evidence. No, no, no. Isn't that claim construction at that point? It is not, Your Honor. I'm sorry. I don't mean to interrupt. Go ahead and finish and I'll start. I apologize. The decision has already been made as to whether there's clear, unmistakable disavowed clean scope. And that decision was the low frequency where we're left with the Yolen reference as to the low frequency. Now, it seems to me that expert testimony was brought in to say, what do we have left? What does that mean, low frequency? And that's where the expert said, well, it goes up to at least 500 Hz. No, Your Honor. I actually, I think once the court has made, and I say this respectfully, but once the court has really made the decision that what Mr. Wendt told the patent office was, I distinguish Yolen because it does not, we have disclosed as slow varying signals and does not address audio or higher frequency signals, which is 20 Hz or greater. At that point, using an expert to come in and say, I'm going to look at Yolen and I'm going to tell you that the real distinction should be at 500 or greater is improper under this court's law. That's claim construction there. The decision's already been made that Yolen discusses or does not discuss audio or higher frequencies. And the question is, well, what's that decision that's been made? Then the expert seems to me that was brought in to discuss, what is audio or higher frequencies? In this case, every expert agrees audio or higher frequencies means 20 Hz or greater. So what the, oh, sorry. Dedrean, I don't want to interrupt. I wanted to just ask a quick question. No, no, go ahead. Which was, counsel, do you think that Mr. Nguyen distinguished Yolen because Yolen doesn't teach audio or higher frequencies? Or was it that he didn't think that Yolen would work with audio or higher frequencies? Several times he says that Yolen won't work. For example, even on page 1785 of the appendix, he says that an artisan may want to combine two signals coming from different sources, one from a UI and another from an audio or higher frequency signal. However, both the patents, that is Burnett and Yolen, do not anticipate the problem of generating composite signal. And then it says Burnett would not work. And it says Yolen's method only works for slow varying signals. And then says that he has a framer that would work with both an audio or higher frequency with a slower frequency signal. So, again, my question is a little complicated. But do you think that he was saying that Yolen doesn't have a higher frequency signal? Or was he saying that Yolen wouldn't work with a higher frequency signal? So, Your Honor, he clearly says the latter because he talks about that collision problem and for the sentences you read. But he also actually does say Yolen only teaches slow varying signals. Because he has a sentence, and I can do it from the pages you're on too. He says on page appendix 1784. He says Yolen only uses the configuration to receive the slow varying signal from the physiological response sensors. I think that's the sentence you're referring to. Yes, Your Honor. But, again, he's referring to the configuration. And he says to receive the slow varying signal. And all of this has to be read in context of the entire discussion, right? Right. So, with that interpretation, Your Honor, you could say that he's really going towards Yolen doesn't implement it. But the way it can also be interpreted fairly is I think what he's saying is for Yolen, whatever their implementation is, it's all slow varying signals. I think that's part of the statement that I think he is making there. That he has read Yolen. He's representing Yolen to the patent office and saying, hey, this is addressing only slow varying signals. And you're right. He's also saying it cannot handle something with faster signals, the audio or higher frequency signals. But that is the main implication. Yes. Your Honor, because I'm out of time, unless there's other questions, I'll just make one point and then I'll save the balance for my rebuttal. I just want to make sure this court knows or remembers that this term input signal was also interpreted in a Delaware case. And in that case, the Delaware court actually construed input signals to be audio or higher frequencies based on the intrinsic record. And the reason I bring this to your attention is that this is not your typical situation where you're reviewing whether the district court construed the claim properly. There are two district courts that have construed the same term in two different ways. The other one is not ready for your review. And as such, effectively, you're deciding which district court got it right. And to be clear, Sony, the defendant in the other case, asked the Delaware court to reconsider its claim construction based on this Washington court's decision. The district court reviewed this decision and decided not to change its construction. Do I also remember correctly that there were two IPRs in which the board also interpreted this term to say that the disclaimer was of signals that are not audio or higher frequencies? Yes, Your Honor. In fact, I think there's three, but they all said the same. Okay. Any more questions? Yes. May I ask you another question? Yes, of course. Okay. I see that the court explained in J16 that based on Yolen's disclaimer of slow variant signals, the court said that the opponent would understand that the upper bound of slow variant signals covered by Yolen to set the lower bounds of fast variant signals covered by the 730 patent. First of all, I'm not sure that this particular factor or what I just read, this position that I just read, was considered in the other district court cases. But what does that say to you? Your Honor, I'm sorry. I'm reading it right now. You're looking at the last sentence, based on this expressed disclaimer of Yolen's slow variant signals. Is that the sentence you read to me, Your Honor? Yes. That a person of ordinary skill and art would, quote, understand the upper bound of slow variant signals covered by Yolen. So the upper bound of slow variant signals covered by Yolen set the lower bound of fast variant signals covered by the 730 patent. Your Honor, the problem… Do you dispute that? I do dispute it to the extent that it varies from what Mr. Nguyen told the patent office. So if you read in context, what he's saying is Yolen cannot handle a signal that's both slow variant and one with audio or higher frequencies. So the minute you have that as his line, he's drawn a line saying Yolen can never be in a situation where you have signals that are both slow variant and something over 20 and handle it. And so he's trying to go in the back door and saying, I'm going to make slow variant into greater than 20 violates that rule because now you're actually saying something that's contradictory to what Mr. Nguyen told the patent office to distinguish Yolen. Which is Yolen can never handle that situation where you have something that's slow variant and a signal that contains a frequency greater than 20. And so I disagree with the court on that because I don't think a person of ordinary skill and the art would read that because Mr. Nguyen is so clear that Yolen cannot handle signals where you have both slow variant and something that's greater than 20 hertz. And because he even says it's a collision problem. Did the expert testimony, did that evidence go to answering this particular point? What the expert really kind of did was, Your Honor, he went the other way. He just took Yolen and didn't worry so much about Mr. Nguyen's statement. He took Yolen and he said at that time, I think you can have physiological sensors that can go up to 500 hertz. And then they just backed into it and said, okay, well, then that must be how you read it, which is contrary to exactly how we do claim construction. It now left the intrinsic record and started to look at Yolen and started to say, well, what would the patentee really mean in this context? Not holding him to the words that he actually said to the patent office. Thank you. Okay. Anything else at the moment? We'll save you rebuttal time. Let's hear from Mr. Riebinger. Thank you, Your Honor. First, I'd like to address a couple of the points that Mr. Pedmanabhan made. First, regarding the Sony case. The Sony case was based on a different record and different arguments. The arguments that were submitted to the district court, the District of Washington, that resulted in the claim construction in this appeal were not submitted to the court in Delaware until after the district court in Washington made its ruling. And at that point, the judge in the Sony case said that it was too late for Sony to propose new arguments. So it was not a circumstance where the District of Delaware affirmed its conclusion despite what the District Court of Washington said. They simply said it was too late for Sony to make those arguments. And regarding the Patent Trial and Appeal Board conclusion, they did say that the input signal was audio or higher, but they added a very important additional comment. The parties had argued about whether they needed to be higher, the input signals needed to be higher than the user input. And the PTAB said that we do not need to set the exact point for the purposes of the IPR, but they stated that the input signals need to have frequencies that are significantly higher than the user input signals. Counsel, this is Judge Stahl. I just wanted to ask you, I think that, do I understand you to believe that there's maybe two disclaimers here? One is disclaimer of signals that are not audio or higher, and secondly, a disclaimer of slow veering signals in Yolen? Yes, Your Honor, that is correct. We believe that there were two disclaimers, and the District Court's claim construction that's on appeal here is focused on the first disclaimer, where both parties agreed that Yolen's physiological response sensor signals were disclaimed based on the frequency. Now, I think maybe there's one sentence that's the strongest to support you on that. It's on 1784, the one about Yolen only uses the configuration to receive the slow veering signal coming from the physiological response sensor. Do you agree with that? Yes, that is a strong support for our position, Your Honor. Don't I have to read that, though, in light of all the other things that are said on these two pages at 1784 to 1785? I mean, he says three times after that that Yolen doesn't anticipate audio or higher frequencies, and he says that his invention uses audio or higher frequencies. He says it at least three times. So don't I have to read that language about slow veering and Yolen in the context of all the other things that are said? Yes, Your Honor. The statements in the prosecution history are all read together, and we agree with that. But the statements about audio or higher are not at all as clear as the distinction, the disavowal of the Yolen physiological response sensor signals because the actual language that is used talks about Yolen not using signals to receive, and here's the quote, signals containing audio or higher frequencies. So that's phrased in the alternative. It's not a definitive statement. It's a disclaimer of signals not containing audio frequencies, or it's a disclaimer of signals not containing frequencies higher than audio, whereas in contrast we have a very express and agreed disclaimer of the Yolen physiological response sensor signals. Now the question I asked your opposing counsel earlier, and I apologize for interrupting you. I want you to know that I'm a little skeptical of your position, so that's why I'm asking all these questions. I want to give you the fairest chance to respond to my concerns, okay? Yes, Your Honor. One of my questions is I read this entire context, and I see where it's said over and over again that Burnett and Yolen just aren't able to or don't anticipate the problem of this collision, and that they only work for these slow varying signals. To be distinguished from saying Yolen doesn't disclose anything but slow varying signals, it seems to be saying Yolen couldn't work with anything other than slow varying signals. And there's several places where it talks about how Yolen doesn't teach or suggest a method that could combine a high frequency signal with a low frequency signal. And so what is your response to that? Your Honor, the disclaimer of Yolen signals based on frequency is expressed. Whether it was something that was necessary doesn't change the fact that a person of ordinary skill reading the prosecution history would understand that Yolen signals were disclaimed. All of the frequencies of Yolen signals, not just the frequencies below 20 hertz, and not just the frequencies that didn't overlap with audio, and it includes that bottom 2.5% of the audio range. Do you want to get into specifics on which specific sentences I should be looking at? Because, to be honest, what you're saying to me is a little conclusory. Yes, Your Honor. Okay, thank you. Yes, Your Honor. Of course, there is primarily the statement that Yolen only uses the configuration to receive the slow varying signal coming from the physiological response sensors. That doesn't say that some of the physiological response sensor signals are slow varying. It says that they all are. So whatever is the signal characteristic of Yolen, that was disclaimed. But it's also the purpose of the invention. If you look at what Mr. Nguyen invented, he combined... Go back to his pages on page A1784-85, because that's what really I need to focus on to see what he said. So what other sentence do you think supports your position here? If you look at page 1784, which is also page 3024, there is a statement that Yolen's invention does not teach or suggest any approach for receiving and recovering that kind of input signal. So what the inventor is saying is that there is nothing in Yolen that is consistent with an ability to deal with signals above the bottom of the audio range. That's not the same thing. That doesn't say that he thinks that Yolen's physiological sensors provide frequency signals that are not in the audio or higher frequency range. He's saying that it doesn't have the hardware or any approach for dealing with that kind of input signal. What he's saying, Your Honor, is that all of Yolen is disclaimed, not just part of it. And what he intended to disclaim, what his interpretation, what his personal belief was, that's not the standard. The sea change case that we cite in our brief makes that clear. The standard is an objective one, not the subjective intent of the invention. What if it turns out that Mr. Yolen was mistaken? He was mistaken. He thought that Yolen was just limited to below 20 hertz or audio frequency. Should we hold that mistake against him? Does our case law say that, it does say that we should hold that mistake against him, right? Yes, it does, Your Honor. Okay. The standard is how a person of ordinary skill would understand what was disclaimed, regardless of the intent of the invention. What if he actually was wrong in saying that Yolen couldn't handle frequencies of audio or higher? Would we hold that against him? It depends on how a person of ordinary skill, Your Honor, would understand that sentence. We believe a person of ordinary skill would understand that sentence and the rest of the prosecution history to say that all of Yolen, all of the Yolen frequencies were disclaimed. That the Yolen frequencies were slow varying and they're not for the purpose of the invention, which is to combine fast and slow. That's, by the way, consistent with the way the Patent Office looked at it. Can I ask you another question? Of course, Your Honor. Your methodology, this methodology that was used for understanding the scope of Mr. Nguyen's disclaimer seems very unusual. Do you know a single case from this court that used expert testimony, testing embodiments, and the distinguished prior art to understand the scope of an inventor's prosecution history disclaimer? Not those exact facts, Your Honor, but the Paul case, which we cited, is very much on point. Because in the Paul case, there was a disclaimer of art in a brochure. And as this court said, the question became, what did the brochure disclose? And it was remanded for the district court to go back and determine that evidentiary question. What did the brochure disclose? In this instance, the district court has done that work. They did the work by consulting an expert whose declaration was not contested by G.E.T. They could have chosen to contest the declaration, but they chose not to. And so the district court has done the work and determined effectively what's in Yolen. What does it disclose? It discloses a range of frequencies. And Dr. Chizik did that by reference to the contemporary as of the time of the invention. Can I ask you something else? I'm certainly familiar with that declaration. I know exactly what you're talking about. My other question is, did you present an involutive defense here based on Yolen, or did you present a non-infringement defense based on practicing the prior art? The appeal in this case is based on the summary judgment. I understand that. I'm just asking if you presented those other defenses. Not in the summary judgment motion, Your Honor, but they are defenses that are present in the case. So the summary judgment was based first on what we believe is the correct claim construction, and we had an alternative argument of indefiniteness. But in the summary judgment motion, we only presented the argument that the proper construction, under the proper construction, there cannot be infringement. Thank you. Any more questions for Mr. Redinger? None for me. All right. And Rebeto from Mr. Badman-Abbin? Thank you, Your Honor. So let me just start with the last question that Your Honor asked. Yolen is not one that Nintendo relies on in the district court for invalidity. That is not one of their charted references. We have a local practice there where everybody has to chart the references, and Yolen is not a charted reference. And separately, there is not a defense from Nintendo based on practicing the prior art. And so I would disagree with Mr. Redinger on that. The only other point I just want to quickly address, Your Honor, we addressed the Paul case in our papers. But in the Paul case, it's very different in that the statements that they're all looking at from the patent holder that actually implicate it. All they say is none of the materials in the brochure disclose these claims. And it's a very general statement, so you have to go back to the brochure to look at what are they talking about. Here, for the reasons we've all discussed, it really comes down to a few paragraphs, and the focus for Mr. Nguyen's statements throughout is really about handling these two types of signals, slow varying versus signals having audio or higher frequencies. And really, that is the focus of his statement. Whether he's right or wrong, that's the line he drew, and that's the disclaimer that people have found, and it's the appropriate disclaimer for this case. Unless there are other questions, I have nothing else, Your Honor. Any more questions? No. All right. Well, then, with thanks to counsel, the case is taken under submission. That concludes our argued cases for this morning. Thank you, Your Honor. The Honorable Court is adjourned until this afternoon at 2 p.m.